## Manning Mayfield v. Alton Ry., G. & E. Co.

1. CORPORATIONS—*Stockholder Can Not Surrender Stock and Get Value Thereof Without Consent of Corporation.*—It is true that stock is the individual property of the stockholder, and he may do as he chooses with it in certain respects, but he can not surrender it to the corporation and withdraw from the corporation its value, without consent of the corporation, until the "winding up" stages of the corporation's existence has been reached.

2. SAME—*Consolidation of, Stockholder's Contract Governed by Statute in Force at Time of Subscription.*—The general rule is that a stockholder can not be forced into a new corporation without his consent, yet the statutes in force at the time of his subscription, which authorize consolidation, enter into and become part of the subscription contract, and under such statutes a subscriber for stock buys it in as full contemplation of the probable exercise of this power as of the exercise of any other corporate power granted.

3. SAME—*Where Right of Consolidation Granted by Statute, Stockholder Must be Governed by Action of Corporation When Lawfully Consummated.*—Where the right to consolidate is granted by statute to corporations, like all other rights granted by statute, it is granted that it may be exercised, and a stockholder has consented in advance in his subscription contract to such consolidation, if the same shall be lawfully consummated; he has no more right to rescind such consent than he has to rescind his promise to pay for his stock, and he has no more right to refuse to follow his corporation into such lawful consummated consolidation, than he has to refuse to remain with it in the proper exercise of any other power granted.

4. SAME—*Winding-up Stage of Constituent Corporations Not Accelerated by Consolidation.*—The winding-up stage of constituent corporations, within the meaning of these words as applied to the time for distribution of the corporate assets, is not accelerated by the consolidation, and therefore the mere fact of consolidation will not give the stockholder the right to have the corporate assets converted into money.

5. SAME—*When Right to Recover Value of Shares of Stock upon Consolidation Exists.*—The right to recover the value of shares of stock upon the consummation of a consolidation, may exist when the consolidation is effected without authority or wrongfully, and without the consent of the suing stockholder, or where the right to consolidate is granted after such stockholder has subscribed for his stock.

6. SAME—*Duty of Constituent Corporation After Consolidation as to Accepting Surrender of Stock and Paying Value Thereof.*—Upon consolidation, all the duties and obligations of constituent corporations, whether to the public or to private persons, are cast upon and must be performed and discharged by the consolidated corporation; but it is not

the duty of a constituent corporation in which one holds stock to accept a surrender of that stock and pay the value thereof in money from the corporation assets until such time as that corporation should reach the " winding-up" stage within the proper meaning.

**Assumpsit**, for share of stock, etc. Appeal from the Circuit Court of Madison County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

JOHN G. IRWIN, attorney for appellant.

LEVI DAVIS and HENRY S. BAKER, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This case was before this court at a former term, and our opinion then rendered will be found reported in 95 Ill. App. 146. The questions involved are raised on demurrer to the declaration. The demurrer is general. The declaration, as amended, is as follows:

"Manning Mayfield, the plaintiff in this suit, who sues for the use of Huntington Smith, by John G. Irwin, his attorney, complains of the Alton Railway, Gas and Electric Company, the defendant, of a plea of trespass on the case on promises.

For that heretofore, to wit, on the 17th day of July, A. D. 1895, at, to wit, the county of Madison and State of Illinois, a corporation known as the Alton Railway and Illuminating Company was duly organized under the statute of the State of Illinois in such case made and provided, with a capital stock of two hundred and fifty thousand dollars, divided into twenty-five hundred shares of one hundred dollars each, which were fully subscribed and issued; that the object for which said corporation was formed, as set forth in its articles of incorporation, was to construct, maintain and operate street railways, in the city of Alton, in the county of Madison and State of Illinois, and in any other city, village or town in said county of Madison, and operate said street railways with animal, dummy or other motive power; also to manufacture, generate or produce steam, gas, electricity or other medium for the purpose of operating street railways, and for the further purpose of furnishing, selling and distributing the same or other medium, for heat, light and power, and in general to do and perform all things necessary and convenient and

proper in and about the business of operating street railways and furnishing heat, light and power; that afterward, to wit, on the day and year aforesaid, at the county aforesaid, for a valuable consideration then and there paid, the plaintiff became the owner of fifty of the shares of the capital stock of said company which were fully paid up, and were and are of the value of five thousand dollars, which said fifty shares the plaintiff continued to hold and own for the use aforesaid, until on and after the 8th day of August, A. D. 1899. and the certificate for which he still holds and owns for the use aforesaid. And the plaintiff avers that prior to the said 8th day of August, A. D. 1899, a corporation known as the Alton Railway, Gas and Electric Company was incorporated under the laws of the State of Illinois, with a capital stock of two hundred and fifty thousand dollars, divided into twenty-five hundred shares of one hundred dollars each, which were also fully subscribed and issued, but upon which the plaintiff avers nothing was paid by the holders thereof, or by the subscribers thereof, prior to or on the said 8th day of August, A. D. 1899; that the objects for which said last named corporation was formed, as set forth in its articles of incorporation, were as follows, to wit: First. To build, buy, own, lease, operate and maintain street railways, the cars on said railways to be propelled by any motive power except steam locomotive engines, said railway to be within the counties of Madison and St. Clair, in the State of Illinois, and between any points in said counties and State. Second. To generate, transmit and supply electricity for the purpose of furnishing light, heat and power. Third. To generate, transmit and supply steam for heat and power. Fourth. To provide, transmit and supply water for heating, domestic and manufacturing and public purposes. Fifth. To generate or manufacture, transmit and supply gas for heat, light and power. Sixth. To own, lease, control, maintain and operate parks, pleasure resorts and attractions, in connection with such street railways, which may be owned or operated by said company. Seventh. To buy, erect, construct, sell supplies, fixtures, appliances, etc., necessary and convenient for any and all of the above mentioned purposes.

And the plaintiff further avers that on the said 8th day of August, A. D. 1899, certain proceedings were had, whereby the two corporations above named were consolidated into one corporation by the name of the Alton Railway, Gas and Electric Company, which is the defendant

company in this suit; that at the time of the consolidation
of said companies, the capital stock of the defendant com-
pany was increased to five hundred thousand dollars, divided
into five thousand shares, of one hundred dollars each; that
the members of said corporations who participated in said
consolidation proceedings, undertook to provide that in lieu
of shares of stock held by the stockholders, respectively, of
the Alton Railway and Illuminating Company, an equal
number of the shares of the defendant company should be
issued to the respective holders thereof upon surrender of
the certificates held therefor.    And the plaintiff avers that
at the time of the said consolidation proceedings, Joseph
F. Porter was the holder and owner of twenty-four hundred
and forty-two shares of the Alton Railway and Illuminat-
ing Company, and twenty-four hundred and eighty of the
shares of the Alton Railway, Gas and Electric Company,
and that H. S. Baker, Jr., and C. A. Caldwell, each held
five shares of said companies; that but ten shares of said
last named company were held by persons other than those
above named, and that but fifty-eight of the shares of the
first named company were held by persons other than those
above named, the fifty shares of the plaintiff being among
the number not held by them; that at the time of said con-
solidation proceedings and prior thereto, the assets and
resources of one of said constituent companies, to wit, the
said Alton Railway Gas and Electric Company, consisted
wholly and entirely of the unpaid stock thereof; that it
never owned or operated a street railway, or had any roll-
ing stock or tangible property, or choses in action or money,
or any capital or resources, except the liability of its stock-
holders, and that its stock was wholly unpaid; that at the
same time, and prior to the said 8th day of August, A. D.
1899, the said Alton Railway and Illuminating Company
owned and operated street car lines, which were well
equipped, and had assets and tangible property and money
and choses in action of great value, to wit, of the full value
of two hundred and fifty thousand dollars, and its stock
was fully paid up; that after the consolidation of said com-
panies, the assets and resources of the consolidated com-
pany consisted wholly of the assets, property and resources
of the said Alton Railway and Illuminating Company,
which it absorbed by force of said consolidation proceed-
ings, and of the liability of its stockholders upon unpaid
stock; that by increasing the stock of the defendant com-
pany to five hundred thousand dollars and doubling the
number of shares, thereby making them equal to the total

of the capital and shares of both constituent companies, and by proposing to give to the plaintiff only the same number of shares in said consolidated company that he held in said constituent company, the defendant company undertook to water the stock of the plaintiff, and to diminish his interest, relatively, in the assets and tangible property of said defendant company one-half, and to give him an interest in the defendant company of one one-hundredth, in lieu of one-fiftieth interest in said constituent company, and to thereby diminish the value of his stock one-half. And the plaintiff further avers that he was the holder of a certificate for forty shares of stock, as aforesaid, for the use aforesaid, at and before the consolidation of said corporation, and that he did not consent or agree to the consolidation of said companies, nor participate in any of the proceedings to consolidate the same, or agree to accept of the defendant company in lieu of the stock he held in said Alton Railway and Illuminating Company, fifty shares of the defendant company, and that the said last named company, pursuant to its agreement to consolidate its stock, franchises and property with that of the defendant company, has disposed of all its property by transferring and conveying the same to the defendant company, which became the successor in business of the said Alton Railway and Illuminating Company, and was merged into and amalgamated with it, and has absorbed all its property, stock and franchises, except the shares of the plaintiff above named; that after the consolidation and amalgamation of said corporation as aforesaid, the plaintiff demanded of the defendant company payment of the value of the shares held by him as aforesaid, and offered to surrender his certificate for the same, for cancellation, but the defendant refused to accept said certificate or to pay the plaintiff the value of his said shares; by reason whereof he brings suit," etc.

The trial court sustained appellee's demurrer to appellant's amended declaration. Appellant elected to stand by his declaration and the court rendered judgment against him for costs. Appellant duly excepted, brings the case again to this court by appeal, and assigns as errors that the court erred in sustaining appellee's demurrer and rendering judgment against appellant, and in not sustaining appellant's amended declaration.

On the 17th day of July, 1895, the Alton Railway and

Illuminating Company was organized under the General Corporations act of this State, with a capital stock of $250,000, all fully paid up. Appellant was the owner of fifty shares of this stock, of the aggregate par value of $5,000. This corporation owned, as assets, street car lines and equipments therefor, money, and choses in action, all of the aggregate value of $250,000.

Subsequent to the date of the organization of the above mentioned Alton Railway and Illuminating Company, and prior to the 8th day of August, 1899, the Alton Railway, Gas and Electric Company was organized, also under the General Corporations act of this State, with a capital stock of $250,000. This stock was all duly subscribed, but none of it was paid up. This corporation owned as assets, its unpaid capital stock subscriptions, all of the aggregate value of $250,000.

On the 8th day of August, 1899, in pursuance of the powers conferred by statute in the General Corporations act, Sec. 65, Chap. 32, Starr & Curtis' Statutes, 2d Ed., 1896, the two above mentioned corporations were consolidated, retaining the name of one of the constituent corporations, and by such consolidation the two corporations became one corporation under the name of Alton Railway, Gas and Electric Company, with a capital stock of $500,000, being a sum equal to the original capital stock of the two constituent corporations, and the same in amount as the aggregate of the actual value of the assets of the two. By the terms of the consolidation it is provided that in lieu of the stock held by the stockholders, respectively, of the two constituent corporations, an equal amount of the stock of the consolidated corporation shall be issued to such stockholders, *i. e.*, that each holder of stock of a constituent shall have as many dollars of the consolidated stock as he held dollars of the constituent stock.

By the consolidation of the two corporations, all of the assets of the Alton Railway and Illuminating Company, and all of the assets of the original Alton Railway, Gas and Electric Company, and two constituents, became transferred

to the consolidated corporation, and the consolidated cor-
poration, under the name of the Alton Railway, Gas and
Electric Company, being the retained name of one of the
constituents, became successor to both the constituent cor-
porations, and as such, liable for all the debts and liabilities
of each of the constituents, which existed or had accrued
prior to the consolidation.

In construing a declaration upon demurrer, as is the case
here, the language, inferences and intendments must all be
construed most strongly against the pleader, and when so
construed, the above statement is a full and correct analysis
of the controlling features of appellant's case as disclosed
by the material allegations of his declaration, as we under-
stand that instrument, except the further allegations, that
prior to the consolidation appellant was and still is the
owner for a valuable consideration, of $5,000, par value,
of the capital stock of the Alton Railway and Illumi-
nating Company, one of the constituents; that this stock
was at the time of the consolidation worth $5,000; that
appellant did not consent or agree to the consolidation,
nor participate in any of the proceedings to consolidate,
nor agree to accept the stock of the consolidated corpora-
tion in lieu of his stock in the constituent; that the provis-
ion of the consolidation whereby appellant was allowed to
have only the same amount of stock of the consolidated
corporation that he held in the constituent corporation, was
an attempt to diminish his interest, relatively, in the assets
of the consolidated corporation, one-half; that appellant
demanded of the consolidated corporation payment of the
value of the stock owned and held by him, and offered to
surrender his certificate for cancellation, and that the con-
solidated corporation refused to pay him the value of his
stock.

To recover, in money, the value of the stock he owned in
the constituent corporation at the time of the consolidation,
appellant brings this suit in assumpsit against the con-
solidated corporation, in its retained name of the Alton
Railway, Gas and Electric Company. This consolidated

corporation will hereafter in this opinion be designated by the term "appellee."

It is not contended that there was any legal bar to this consolidation. In fact it is admitted that the consolidation was regularly and legally consummated. Appellant's counsel also admits that the unpaid subscriptions to the capital stock of the original Alton Railway, Gas and Electric Company, became assets of appellee, the consolidated corporation, and that the same may now be collected, if need be by legal process, and availed of by appellee as assets.

Counsel strenuously insists that in the consolidation of the two corporations appellant is not being fairly dealt with; that it is proposed to give him only one-half as much as he is justly entitled to receive, and to transfer him, like a peon, with the ranch when it changes hands; and we are asked to give this aspect of the case due consideration in our deliberations upon the case. Counsel says that appellant held one-fiftieth part of the stock of the constituent corporation in which he was a stockholder before the consolidation, and that now it is proposed to give him only one-hundredth part of the stock in the appellee corporation; that this is confiscation—is robbery. Such statements and charges demand of the court, due consideration. The capital stock of the Alton Railway and Illuminating Company was $250,000, and its total assets were worth $250,000; the capital stock of the original Alton Railway, Gas and Electric Company was $250,000, and its total assets were worth $250,000. Now those two corporations lawfully consolidate, thus forming the appellee corporation, which it is admitted lawfully succeeds to and takes to itself all the assets of both these constituents, worth $500,000, and lawfully fixes its capital stock at $500,000, actually owning a dollar's worth of assets for every dollar of its stock. One hundredth part of $500,000 is equal to one fiftieth part of $250,000, and so it appears to us that as to this feature of the case appellant has no just cause of complaint. As to being transferred like a peon, we take that to be a mere "figure of speech."

Counsel says in substance, that while he fully admits that unpaid subscriptions for stock in a constituent corporation pass to the consolidated corporation, and that the consolidated corporation can sue the subscriber and compel him to pay the amount of his subscription to it, and to accept its stock in lieu of that for which he subscribed, yet this is no argument against the soundness of his position. It is to our minds an argument of some weight, at least, against the justness of his position. Counsel's position is that one who has subscribed and paid for stock in a constituent corporation before the consolidation, if he has not consented to the consolidation need not accept the stock of the consolidated corporation in lieu of that he held in the constituent, but may sue the consolidated corporation and get his money back. We may suppose that Mayfield and Smith on the same day each subscribe for $5,000 of the stock of X corporation. Mayfield pays at once for his stock and the $5,000 that he pays becomes assets of the corporation. As a subscription for stock before it was paid, it was assets, and as cash after it is paid it is still assets. It was worth $5,000 as assets before it was paid and is worth $5,000 as assets afterward. Before Smith has paid for his stock, X corporation lawfully consolidates with Y corporation, and the two constituents thus form Z corporation. The $5,000 cash that Mayfield had paid for his stock passes to the consolidated corporation as assets, and the $5,000 subscribed that Smith owes for his stock also passes as assets to the consolidated corporation. The one is just as much assets of Z corporation after the consolidation as the other, neither more nor less, and are of equal value. Neither Mayfield nor Smith consent to the consolidation. It is conceded that Smith is bound by law, to pay to Z corporation the $5,000 that he had subscribed for stock of X corporation, and that he must accept stock of Z corporation in lieu of that of X corporation, for which he had subscribed. Thus Smith is denied the right to refuse to accept the stock of Z corporation and withdraw his $5,000 subscription, the part of the assets contributed by him. If this is lawful and just treatment

as to Smith, and all the authorities, including appellant's counsel, agree that it is, then under what rule or principle of justice can Mayfield be allowed to refuse to accept the stock of Z corporation and withdraw the part of the assets contributed by him?

As we understand counsel, he bases his suit upon the propositions, that at common law a consolidated corpora-tion is liable for the debts of the constituent corporations merged into it, and that the section in our General Corpo-rations act, which provides that such consolidated corpo-ration shall be liable for all the debts or liabilities of each corporation included in such consolidated corporation, exist-ing or accrued prior to such consolidation, is declaratory of the common law.

The line of argument is, stock is the individual property of the stockholder and not the property of the corporation; that while less than all of the stockholders may lawfully consummate a consolidation, stockholders can not be forced into new relations with new corporations without their con-sent; that upon consolidation, the constituent corporations, as independent entities, cease to exist, and all their duties and obligations, whether to the public or to private persons, are cast upon and must be performed and discharged by the consolidated corporation; that the paid-up stock of a corporation is a liability of that corporation; that upon the "winding up" of that corporation, such liability becomes payable to the stockholder; that a stockholder in such case has the right to have the assets converted into money for the purpose of raising a fund with which to make such pay-ment; and that a consolidation of a corporation is a "wind-ing up" of the constituent corporations.

We agree with counsel in his statement of the rules of common law, and that our statute upon that subject is merely declaratory of the common law. The question is, does appellant's case fall under that rule?

It is true that stock is the individual property of the stockholder, and he may do as he chooses with it in certain respects, but he can not surrender it to the corporation and

withdraw from the corporation its value, without the consent of the corporation, until the " winding up " stage of the corporation's existence has been reached.

Whether stockholders can, or can not be forced into new relations without their consent, depends upon conditions. and also upon what we mean by the word " consent." While the general rule is, that a stockholder can not be forced into a new corporation without his consent, yet statutes in force at the time of his subscription, which authorize consolidation, enter into and become part of the subscription contract, and under such statutes a subscriber for stock buys it, in as full contemplation of the probable exercise of this power as of the exercise of any other corporate power granted. This right, like. all other rights granted by statute to corporations, is granted that it may be exercised, and such stockholder has consented in advance, in his subscription contract, to such consolidation, if the same shall be lawfully consummated; and he has no more right or power to rescind such consent than he had to rescind his promise to pay for his stock, and he has no more right to refuse to follow his corporation into such lawfully consummated consolidation, than he has to refuse to remain with it in the proper exercise of any other power granted to it. If he subscribed for the stock before the passage of an act authorizing the consolidation, and in a corporation whose charter did not so authorize, then the rule would be as counsel contends.

The corporations disclosed in appellant's declaration were both organized under the General Corporations act of this State; that act at the time contained a provision authorizing the consolidation, and the consolidation complained of was regularly and legally consummated in pursuance of the statute and in the proper exercise of the power granted. That provision of the statute is a part of appellant's stock subscription contract with his constituent corporation, as much so as if written at length in such contract, and repeated in each certificate of stock accepted.

It is true, as counsel contends, that upon consolidation,

all the duties and obligations of the constituent corporation, whether to the public or to private persons, are cast upon and must be performed and discharged by the consolidated corporation, but it was not the duty of the constituent corporation in which appellant held stock, to accept a surrender of his stock and pay him its value in money from the corporation assets, until such time as that corporation should reach the "winding up" stage within the proper meaning. While for most purposes the constituent corporations cease to exist as independent entities, yet their corporate existence is not altogether ended, and regardless of legislation in that respect they continue to exist, though under the new name, to such an extent as to preserve all their existing obligations unchanged, until in the fullness of time these obligations mature, and then the duty attaches to the consolidated corporations to pay, perform and discharge such obligation.

The winding-up stage of the constituent corporations, within the meaning of these words as applied to the time for distribution of the corporate assets, is not accelerated by the consolidation, and therefore the mere fact of consolidation will not give the stockholder the right to have the corporate assets converted into money; nor is such consolidation a winding up of the constituent corporations, within the proper meaning of these words as applicable to the state of case set up in appellant's declaration.

The right to recover in a suit of this character upon the consummation of a consolidation, may exist when the consolidation is effected without authority, or wrongfully, and without the consent of the suing stockholder, or where the right to consolidate is granted after such stockholder has subscribed for his stock; but such is not appellant's case.

The judgment of the Circuit Court is affirmed.